IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:16-CV-746-BR

| | | |
|---|---|---|
| A HAND OF HOPE PREGNANCY RESOURCE CENTER, a North Carolina not-for-profit corporation, doing business and ministry as Your Choice Pregnancy Clinic, | ) ) ) ) ) ) | |
| Plaintiff, | ) | ORDER |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF RALEIGH, a North Carolina municipal corporation, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the motion for partial summary judgment filed by the City of Raleigh (the "City"). (DE # 84.) Plaintiff, A Hand of Hope Pregnancy Resource Center ("Hand of Hope"), filed a response in opposition. (DE # 92.) The City filed a reply. (DE # 101.) The issues raised have been fully briefed and are therefore ripe for discussion.

### I. BACKGROUND

Hand of Hope operates a pregnancy resource center called Your Choice Pregnancy Clinic in Raleigh, North Carolina, (Second Am. Compl. (DE # 98), ¶ 3), at 1701 Jones Franklin Road, (Pl. Resp. to Def.'s Statement of Facts (DE # 93), at 1). In December 2015, Hand of Hope purchased a parcel of land at 1522 Jones Franklin Road (the "Property") with plans of relocating Your Choice Pregnancy Clinic to that location. (Second Am. Compl. (DE # 98), ¶¶ 16–20.) The Property is located immediately adjacent to the abortion clinic and in an area zoned as Residential-4 with Special Highway Overlay District-2. (Id.)

The City's zoning procedures and regulations are contained in the Raleigh Unified Development Ordinance (the "UDO"). (See Ordinance Adopting UDO (DE # 12-2).) The UDO

contains an Allowed Principal Use Table (the "Table") that identifies the uses allowed as a matter of right within each zoning district. (See UDO Excerpt (DE # 12-3), at 3-6.) "Civic uses," defined as "[p]laces of public assembly that provide ongoing governmental, life safety, educational and cultural services to the general public, as well as meeting areas for religious practice," are permitted within residential zones without further approval by the City. (Id. at 4.) "Medical uses," defined as "[facilities] providing medical or surgical care to patients," are not permitted within residential zones. (Id. at 4, 12.)

After purchasing the Property, Hand of Hope sought guidance from the City regarding whether its proposed use of the Property was permissible. (Second Am. Compl. (DE # 98), ¶ 36; Summers Decl. (DE # 49-2), ¶¶ 17–18.) The City's zoning officials advised Hand of Hope that rezoning would be necessary. (Second Am. Compl. (DE # 98), ¶ 36; Summers Decl. (DE # 49-2), ¶¶ 17–18.) On 8 January 2016, Hand of Hope representatives attended a pre-application meeting with Daniel Band, the City's Long Range Planner, and Planner Vivian Ekstrom. (Summers Decl. (DE # 49-2), ¶ 20.) Band indicated that Hand of Hope's use was consistent with Office-Mixed Use zoning, and that the rezoning request was consistent with the City's Long Range plan. (Id. at ¶ 22.) Accordingly, Hand of Hope applied to have the Property rezoned as Office-Mixed Use in April 2016. (Second Am. Compl. (DE # 98), ¶ 35.)

The rezoning application was reviewed at several public meetings, including: (1) a neighborhood meeting on 12 February 2016, (2) a Citizen Advisory Council ("CAC") meeting on 23 February 2016, (3) a second CAC meeting on 26 April 2016, and (4) a hearing of the Raleigh Planning Commission (the "Commission") on 10 May 2016. (Id. ¶ 37.) The CAC approved Hand of Hope's application by a vote of 30 to 17. (Id. ¶ 38.) The Commission found that the rezoning was consistent with the 2030 Comprehensive Plan for the City of Raleigh

("2030 Comprehensive Plan"), reasonable and in the public interest, and compatible with the surrounding area. (Id. ¶¶ 40–42.) Accordingly, the Commission voted unanimously to recommend approval of the application to the City Council. (Id. ¶ 39.) The City's zoning staff also prepared a report and compatibility analysis, finding Hand of Hope's use compatible with the surrounding area. (Id. ¶ 43.)

On 17 May 2016, the City Council was provided the Commission's report and recommendations. (5/17/16 Meeting Minutes Excerpt (DE # 14-1).) At this meeting, the City moved that the rezoning request be scheduled for public hearing on 21 June 2016. (5/17/16 Raleigh City Council Tr. (DE # 15-1), at 3–4.) On 21 June 2016, Senior Planner Bynum Walter presented the recommendations of the Commission and the CAC to the City Council. (6/21/16 Meeting Minutes Excerpt (DE # 14-1), at 2.) The City also heard comments from several individuals affiliated with Hand of Hope, who discussed its religious mission. (6/21/16 Raleigh City Council Tr. (DE # 15-2), at 7–13.) Additionally, the City heard statements from several individuals affiliated with A Preferred Women's Health Center, an abortion clinic that neighbors the Property. Calla Hales, administrator of the clinic, spoke in opposition to rezoning for the "ministry." (See id. at 16.) Sharon Mixon also spoke in opposition, noting "this business is not a medical facility. It's a ministry." (Id. at 14.) The hearing was ultimately continued to 5 July 2016. (Id. at 22.)

Prior to the 5 July 2016 hearing, council-members Kay Crowder and Mary-Ann Baldwin asked Assistant Planning Director Travis Crane "to draft findings and reasons" to deny Hand of Hope's rezoning request. (Depo. of Travis R. Crane Excerpt (DE # 94-4), at 21–25.) Crane had not previously been asked to prepare such findings nor was he provided reasons upon which to base the denial. (Id.) Crane prepared the requested findings and reasons along with the City

Attorney. (Id. at 23.) He did not consult Ekstrom, the assigned planner, or Walter, the supervising senior planner. (Id. at 19, 26.) These findings were cited by council-member Baldwin at the 5 July 2016 meeting, in support of her motion to deny Hand of Hope's rezoning request as "premature." (See 7/5/16 Raleigh City Council Tr. (DE # 15-3), at 6.) Thereafter, the City Council voted unanimously to deny the request. (Id.)

Hand of Hope commenced this action, challenging the City's denial of its request, on 17 August 2016. (See Compl. (DE #1).) On 8 September 2016, the City indicated that Hand of Hope may be able to operate on the Property without having the Property rezoned. (Second Am. Compl. (DE # 98), ¶ 48.) Upon advice from the City, Hand of Hope submitted a "Code Interpretation Request Form" to Crane on 15 September 2016, to determine whether its activities would be considered "civic use." (Id. ¶¶ 48–49.) After his investigation, which included asking a number of follow-up questions of Hand of Hope and reviewing its website, Crane issued an official zoning code interpretation on 1 November 2016. (See Official Zoning Code Interpretation (DE # 26-7), at 2–4.) This interpretation found that "the use as described is consistent with the 'civic' use category, and therefore permitted within the Residential-4 zoning district." (Id. at 4.) Crane, however, highlighted discrepancies in the information provided by Hand of Hope, and reiterated that the Property was not suitable for "medical use." (Id. at 2–3.)

In December 2016, the entity that owns A Preferred Women's Health Center appealed Crane's interpretation to the Raleigh Board of Adjustment (the "Board"). (Second Am. Compl. (DE # 98), ¶ 52.) The Board conducted a hearing on 13 February 2017. At the hearing, Crane testified regarding his interpretation and, when asked, that a property could have more than one principal use. (2/13/17 Bd. of Adjustment Hearing Tr. (DE # 35), at 28.) The Board also heard testimony from Hales, administrator of A Preferred Women's Health Center, who expressed

4

concern that Hand of Hope intended to perform "medical testing" on the Property. (Id.) Noel Sterett, counsel for Hand of Hope, testified regarding Hand of Hope's mission and claimed that the ultrasounds were provided as a means to communicate a religious message. (Id. at 32–33, 44–46.) Tonya Baker Nelson, founder and chief executive officer of Hand of Hope, testified that the ultrasounds were performed by registered nurses and used to determine whether there is a viable pregnancy and the likely gestational age. (Id. at 41.) Hand of Hope could not, at that time, provide the percentage of its activities involving a medical component. (Id. at 45–46.) The Board voted 3-2 to reverse the official zoning interpretation and held that Hand of Hope's proposed use was inconsistent with the civic use category. (Id. at 63.)

Hand of Hope filed an amended complaint in April 2017, and in June of that year the parties cross-moved for summary judgment as to Hand of Hope's equal terms claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), free speech claim, and equal protection claim. (DE ## 46, 54.) On 27 July 2018, the court denied Hand of Hope's motion for a preliminary injunction, granted the City's motion for summary judgment as to Hand of Hope's free speech and equal protection claims, and denied the summary judgment motions on the equal terms claim. (DE # 83.) On 30 July 2018, the City moved for summary judgment on Hand of Hope's substantial and undue burden claims under RLUIPA. (DE # 84.) In light of the discovery conducted since the first motion for summary judgment, the City also asked the court to reconsider, or in the alternative, consider a second motion for summary judgment as to Hand of Hope's equal terms claim. (Def.'s Mem. Supp. Mot. Summ. J. (DE # 87), at 19.) Thereafter, Hand of Hope effectively dismissed its undue burden claims. (See Mot. for Leave (DE # 96), at 1; Second Am. Compl. (DE # 98).)

II. ANALYSIS

A.  **Standard of Review**

Summary judgment is appropriate when the record reveals "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material if its existence or non-existence would affect the disposition of the case under applicable law. Anderson, 477 U.S. at 248. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The party seeking summary judgment must demonstrate the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party "must come forward with specific facts showing that there is a genuine issue for trial," and may not rest on the allegations or denials in its pleading. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247–48. In determining whether a genuine issue of material fact exists, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

B.  **Substantial Burden**

Hand of Hope alleges that the City "has imposed or implemented its land use regulations in a manner that has caused and continues to cause Hand of Hope delay, uncertainty, and expense in the exercise of their religiously motivated activities," and thus imposed a substantial burden under RLUIPA. (Second Am. Compl. (DE # 98), at 23.)

"RLUIPA prohibits land use regulations that impose a 'substantial burden' on religious practice, unless they are the least restrictive means of furthering a compelling governmental interest." Jesus Christ is the Answer Ministries, Inc. v. Balt. Cty., 915 F.3d 256, 260 (4th Cir. 2019) (citing 42 U.S.C. § 2000cc(a)(1)). "[L]and use regulations can substantially burden religious exercise where an organization acquires property expecting to use it for a religious purpose but is prevented from doing so by the application of a zoning ordinance." Id. at 260–61. However, religious organizations are not exempt from neutral zoning provisions. Andon, LLC v. City of Newport News, 813 F.3d 510, 516 (4th Cir. 2016); Bethel World Outreach Ministries v. Montgomery Cty. Council, 706 F.3d 548, 557 n.4 (4th Cir. 2013). Thus, "a court will likely find that a religious organization has not pled a substantial burden claim merely by alleging that it moved to an area in which generally applicable zoning provisions bar construction of churches and then was denied exemption from the zoning provisions to build its church." Bethel, 706 F.3d at 557 n.4 (citing Petra Presbyterian Church v. Vill. of Northbrook, 489 F.3d 846, 850–52 (7th Cir. 2007)).

Analysis of a substantial burden claim generally requires consideration of two questions: (1) Is the impediment to the religious practice substantial? and (2) Is the government or the religious organization responsible for the impediment? Jesus Christ is the Answer Ministries, 915 F.3d at 261 (citing Bethel, 706 F.3d at 557–58). The answer to the first inquiry "will usually be 'yes' where use of the property would serve an unmet religious need, the restriction on religious use is absolute rather than conditional, and the organization must acquire a different property as a result." Id. (citing Bethel, 706 F.3d at 557–58). Thus, a substantial burden is more than mere inconvenience or denial of a preference. See Living Water Church of God v. Charter Twp. Meridian, 258 F. App'x 729, 739 (6th Cir. 2007) (not a substantial burden even though

onsite facility would be more convenient); Petra, 489 F.3d at 851 ("Religious organizations would be better off if they could build churches anywhere, but denying them so unusual a privilege could not reasonably be thought to impose a substantial burden on them."); Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1227 (11th Cir. 2004) ("[A] 'substantial burden' must place more than an inconvenience on religious exercise."). The second question concerns "whether the organization had a 'reasonable expectation' of religious land use." Jesus Christ is the Answer Ministries, 915 F.3d at 261 (citing Bethel, 706 F.3d at 558).

Here, the Property may be used for religious exercise. Hand of Hope does not dispute that it may promote its message at the Property through prayer meetings, counseling, and Bible studies, as well as through provision of pamphlets and educational materials. Such services are unaffected by the City's denial of the rezoning request or the Board's reversal of the official zoning code interpretation. However, Hand of Hope alleges that the provision of pregnancy tests and ultrasound imaging—which the City prohibits at the Property—plays an "integral role" in "its religious mission and objectives." (Pl.'s Mem. Opp. Mot. Summ. J. (DE # 92), at 17–18.) Thus, Hand of Hope contends, the City's prohibition on these services at the Property inflicts hardship, amounting to a substantial burden, upon its religious exercise. (Second Am. Compl. (DE # 98), at 23; Pl.'s Mem. Opp. Mot. Summ. J. (DE # 92), at 17–18.)

Applying the Fourth Circuit's guidance, this hardship does not amount to a substantial burden on religious exercise, even assuming the provision of ultrasounds and pregnancy tests in this context constitutes religious exercise. Unlike in Bethel or Jesus Christ is the Answer Ministries, the City has not placed any absolute prohibition on religious use of the Property. See Bethel, 706 F.3d at 558 (deeming it a substantial burden when the County completely prevented Bethel from building any church building, rather than imposing limitations on a building); Jesus

8

Christ is the Answer Ministries, 915 F.3d at 261 (deeming an impediment substantial when the church was barred from using the property entirely).  Hand of Hope may still share its religious message at the Property.  Hand of Hope is only prohibited from providing pregnancy tests and ultrasounds at the Property, services it contends it provides to less than 4% and just over 2% of its clients, respectively.  (Pl.'s Mem. Opp. Mot. Summ. J. (DE # 92), at 18.)  Additionally, Hand of Hope may offer pregnancy tests and ultrasounds in other appropriately zoned locations, including its location at 1701 Jones Franklin Road.  Cf.  Bethel, 706 F.3d at 558 (availability of other properties insufficient to overcome substantial burden claim where current facilities were inadequate and religious organization was prohibited from building *any* church on the new property).

Hand of Hope cites the inadequacies of the 1701 location and the expenses of selling the 1522 location as burdens on its religious exercise.  (See Pl.'s Statement of Additional Facts (DE # 93), ¶¶ 87–97; Second Am. Compl. (DE # 98), at 14–15.)  Hand of Hope contends the burdens of operating at 1701 "would be relieved if Hand of Hope is allowed to operate its ministry at its property at 1522 Jones Franklin Rd."  (Id. ¶ 87.)  The City has not prohibited Hand of Hope from operating its ministry at 1522 Jones Franklin Road.  The City has only prohibited Hand of Hope from offering pregnancy tests and ultrasounds at 1522 Jones Franklin Road.  These services constitute a small portion of Hand of Hope's ministry, by its own contention.  (See Pl.'s Mem. Opp. Mot. Summ. J. (DE # 92), at 18.)  Much like having a gym onsite in Living Water may have been more convenient, providing pregnancy tests and ultrasounds at 1522 Jones Franklin may also be more convenient, but this inconvenience does not amount to a substantial burden. See Living Water, 258 F. App'x at 739.  Likewise, although the "delay, uncertainty, and expense" of selling a property may be burdensome, and *may* cause a substantial burden, it does

not necessarily do so. See Bethel, 706 F.3d at 557 n.4; Andon, 813 F.3d at 515–16. Here, unlike in Bethel and Jesus Christ is the Answer Ministries, enforcement of the City's zoning policies does not render the Property unusable for religious purposes nor does it necessarily require Hand of Hope to sell the Property. Thus, the anticipated burdens accompanying a potential sale of the Property do not constitute a substantial burden in this case.

Hand of Hope has failed to establish that the alleged burdens on its religious exercise, even assuming provision of pregnancy tests and ultrasounds amounts to religious exercise, are anything more than inconvenient or less-preferred. Accordingly, the City's motion will be granted.

**C.    Equal Terms**

The equal terms provision of RLUIPA provides that "[n]o government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. § 2000cc(b)(1). Under this provision, the religious assembly or institution must first "produce[] prima facie evidence to support a claim" of unequal treatment, then the "government bear[s] the burden of persuasion on any element of the claim." Id. § 2000cc-2(b). Here, Hand of Hope's equal terms claim centers on the City's allegedly unequal application of the UDO to the Property. (See Second Am. Compl. (DE # 98), ¶¶ 107–13.) Applying the "accepted zoning criteria test," this court previously ruled that "there is a genuine issue of fact regarding whether Hand of Hope's proposed use of the Property fits within the UDO's definition of a principal civic use." (Order on Mot. Summ. J. (DE # 83), at 22.) Thus, the court held it could not determine whether an EMS station constituted a similarly situated comparator. (Id.)

In light of discovery conducted by the parties, the City now contends there is no longer an issue of material fact as to Hand of Hope's principal use. (Def.'s Mem. Supp. Mot. Summ. J. (DE # 87), at 22.) Specifically, the City argues, "the Court can now determine that [Hand of Hope] conducts a principal medical use and, consequently, there is no evidence of unequal treatment compared to a similarly situated secular entity." (Id.) Hand of Hope contends any alleged medical use of the Property constitutes religious exercise, but alternatively, that such use is merely accessory.[1] (Pl.'s Mem. Opp. Mot. Summ. J. (DE # 92), at 16–18.)

The UDO provides factors which are relevant to deciding whether a use is principal or accessory. (See UDO Excerpt (DE # 12-3), at 2.) These factors include "the type and amount of activity, the hours of operation, the type of customers or residents, how goods or services are sold and delivered, [and the] likely impact on surrounding properties and site conditions." (Id.) The City contends, in sum, that Hand of Hope has a principal medical use because it "provides medical services pursuant to written protocols, forms physician- and nurse- patient relationships with women they treat, and affirmatively seeks to compete with secular health care providers in the public arena without mention of its religious positions and affiliations." (Def.'s Mem. Supp. Mot. Summ. J. (DE # 87), at 31.)

Hand of Hope disputes several of the City's proffered reasons. Specifically, Hand of Hope denies using the Dr. Brannon job description provided by the City, (Decl. of Tonya Baker Nelson (DE # 94-1), at 4); denies using the "Medical Services Consent and Release Form" as alleged by the City, (Id. at 2); and denies attempts to compete with secular organizations without mention of its religious aims, (see Second Am. Compl. (DE # 40), ¶¶ 19–20 (explaining why

---

[1] Hand of Hope contends "that its use of ultrasound imaging and pregnancy tests is a means to accomplishing its religious objectives and inextricably integrated with its religious purpose so as to constitute 'religious exercise.'" (Pl.'s Mem. Opp. Mot. Summ. J. (DE # 92), at 16–18.) However, it maintains that even if deemed "a strictly secular, medical activity," the provision of such services is not the "primary activity." (Id.)

11

Hand of Hope desired to purchase the Property); see Pl.'s Resp. to Def.'s Statement of Facts (DE # 93), at 18–19 (citations omitted) (contending its other website, www.handofhope.net clearly portrays its religious affiliation)). However, Hand of Hope admits that the nurse manager's job description "explicitly contemplates that she provides and supervises the delivery of medical services" and that its policy manual "specifically identifies that it provides 'medical services' to 'patients[']." (See Pl.'s Resp. to Def.'s Statement of Facts (DE # 93), at 6.) Thus, while Hand of Hope disputes some factual contentions, it seemingly acknowledges *some* medical services may be provided on the Property. (See Pl.'s Mem. Opp. Mot. Summ. J. (DE # 92), at 16–20; See Pl.'s Resp. to Def.'s Statement of Facts (DE # 93), at 6–8.) However, it argues provision of these services does not constitute the "primary" use of the Property. (See id.)

The parties disagree regarding the meaning of "principal" and as to the "amount of [medical] activity" conducted on the Property. (See UDO Excerpts, Ex. 3, (DE # 12-3), at 2.) The City contends "that a property can have more than one principal use." (See Def.'s Mem. Supp. Mot. Summ. J. (DE # 87), at 31 (citing 2/13/17 Bd. of Adjustment Tr. (DE # 35), at 28); see also Fourth Decl. Travis Crane (DE # 101-1), at 3–4.) Hand of Hope contends that this interpretation is inconsistent with the UDO's definition of "principal use." (See Pl.'s Mem. Opp. Mot. Summ. J. (DE # 92), at 16–17.)[2] However, Hand of Hope further contends that irrespective of whether a property can have one or two "principal uses," any alleged medical services it provides do not amount to a primary use of the Property. (Id. at 17–18.)

In support of its position, Hand of Hope relies in part upon its Returns of Organization Exempt from Income Tax ("Form 990") from 2014–2017. (See Pl.'s Mem. Opp. Mot. Summ. J. (DE # 92), at 17–18.) The City also cites to the 2014–2016 Form 990s in support of its position,

---

[2] In support of its position, Hand of Hope cites to Chapter 12 of the UDO. This Chapter of the UDO is not a part of the record in this case.

12

but provides only the number of pregnancy tests and ultrasounds administered, without reference to the total number of clients served. (See Def.'s Statement of Material Facts (DE # 85), at 8 (citing Summ. of IRS Form 990 Info. (DE # 86-5)).) The City also cites a 2016 letter from Hand of Hope's counsel to the City's assistant zoning administrator which says in part, "[t]he vast majority of the women come to Hand of Hope to receive a free and confidential pregnancy test and to learn more about their pregnancy." (10/19/2017 letter from Sterett to Crane (DE # 26-7), at 7.) However, the Form 990s show:

> In 2014, Hand of Hope recorded 5,244 client contacts in which clients were supported through appointments, telephone calls, and classes. Of those 5,244 client contacts, less than 5% (221) of those client contacts involved the provision of a pregnancy tests and just over 1% (58) involved ultrasound imaging.
>
> In 2015, there were 5,477 client contacts of which less than 4% (191) involved pregnancy tests and less than 2% (90) involved ultrasound imaging.
>
> In 2016, there were 5,971 client contacts of which less than 4% (193) involved the provision of a pregnancy tests and less than 1% (57) involved ultrasound imaging.
>
> In 2017, there were 5,342 client contacts of which less than 4% (183) involved pregnancy tests and just over 2% (117) involved ultrasound imaging.

(Pl.'s Mem. Opp. Mot. Summ. J. (DE # 92), at 17–18; see also Excerpt of 2014 Form 990 (DE # 94-7), at 4; Excerpt of 2015 Form 990 (DE # 94-8), at 3; Excerpt of 2016 Form 990 (DE # 94-9), at 3; Excerpt of 2017 Form 990 (DE # 94-10), at 4.) Thus, even accepting that a property may have more than one principal use, an issue of fact remains regarding whether Hand of Hope's purported medical use constitutes a principal use.

On the record before it, the court cannot decide the principal use(s) of the Property. Because factual disputes remain regarding Hand of Hope's principal use(s), "the court cannot determine whether an EMS station is a similarly situated comparator." (Order on Mot. Summ. J. (DE # 83), at 22.) As such, the court cannot decide as a matter of law "whether Hand of Hope

has met its burden of showing that it fulfills the accepted zoning criteria in the same way as its identified comparators." (Order on Mot. Summ. J. (DE # 83), at 18.)

### III. CONCLUSION

For the reasons stated herein, the City's motion for summary judgment is GRANTED as to Hand of Hope's substantial burden claim and DENIED as to Hand of Hope's unequal terms claim. Hand of Hope's unequal terms claim remains. The Clerk is DIRECTED to set the final pretrial conference no earlier than 45 days from the filing of this order.

This 2 May 2019.

_____
W. Earl Britt
Senior U.S. District Judge